## In re EVERGREEN SECURITY, LTD., Debtor.

### No. 6:01–bk–00533–ABB.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Feb. 27, 2007.

R. Scott Shuker, Gronek & Latham LLP, Orlando, FL, for Debtor.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion for Recusal, Motion to Disqualify, Disclosure of All Ex Parte Communications and Revocation of all Prior Orders[1] ("Recusal Motion") filed by Mataeka, Ltd., Jon M. Knight, J. Anthony Huggins, Atlantic Portfolio Analytics & Management, Inc., a/k/a APAM, Inc., and International Portfolio Analytics, Inc. (collectively, the "Movants"). The Movants seek: (i) the recusal of the undersigned Judge in this bankruptcy case and in all other proceedings in which the Movants are parties; (ii) the disqualification of the law firm of Gronek & Latham, LLP[2] in this bankruptcy case and in all other proceedings in which the Movants are parties; (iii) the disclosure of alleged *ex parte* communications and filings in this case and in all other proceedings in which the Movants are parties; and (iv) the revocation of all Orders entered in this case and in all other proceedings in which the Movants are parties. Evergreen Security

Ltd., through its President R.W. Cuthill, Jr., filed a response to the Motion.[3]

Evidentiary hearings were conducted on November 29, December 11, 2006, and January 29, 2007 at which counsel for Evergreen, counsel for the Movants, counsel for R.W. Cuthill, and Leigh R. Meininger, the Chapter 7 Trustee for three related involuntary cases, appeared. Jon M. Knight and J. Anthony Huggins were present on some of the hearing dates. The following Findings of Fact and Conclusions of Law are made after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Background

Evergreen Security Ltd. ("Evergreen"), a British Virgin Islands International Business Corporation, sold investment certificates to investors. It filed the above-captioned voluntary Chapter 11 bankruptcy case (the "Main Case") on January 23, 2001 ("Petition Date").[4] Evergreen had less than $1 million in assets and owed debts of at least $214 million to investors on the Petition Date. More than 1,600 claims totaling $380,630,019.97 have been filed in this case. Virtually all of the claims are investor claims.

J.W. Cuthill, Jr. ("Cuthill") was appointed the Chapter 11 Trustee by Order entered on March 14, 2001[5] and sole Director and President of Evergreen pursu-

---

1. Doc. No. 1508. Docket events in *Evergreen Security, Ltd.*, Case No. 6:01–bk–00533–ABB, shall be cited as "Doc. No."

2. Gronek & Latham, LLP recently became Latham, Shuker, Barker, Eden & Beaudine, LLP.

3. Doc. No. 1514.

4. Doc. No. 1. The petition was signed by Martin W. Boelens, Jr. as "President of BMJ International Services, Inc., the Management Company for the Debtor."

5. Doc. Nos. 89 and 90.

ant to Evergreen's confirmed plan.[6] Cuthill instituted approximately 150 lawsuits in six countries, including numerous adversary proceedings, to recover monies for Evergreen's creditors.

Cuthill instituted Adversary Proceeding No. 6:02–ap–00110–ABB ("Kime AP") against Harold James Kime and First American Life & Health Insurance Corporation to recover fraudulent transfers. A Memorandum Opinion and Judgment were entered in favor of Cuthill on June 5, 2003 ("Kime Decision") finding Evergreen was a Ponzi scheme. The investors' funds were invested in highly volatile investments, which was contrary to Evergreen's representations the investments would be fully secured by American mortgage-backed securities. Evergreen used most of the funds received from new investors to pay prior investors. The collapse of the scheme led to Evergreen's filing for bankruptcy.[7] The decision was appealed to the United States District Court for the Middle District of Florida, Orlando Division ("District Court") and the parties dismissed the appeal by stipulation before any briefs were filed.[8]

Cuthill instituted Adversary Proceeding No. 6:01–ap–00232–ABB (the "Mataeka AP") against Jon M. Knight ("Knight"), J. Anthony Huggins ("Huggins"), Mataeka, Ltd. ("Mataeka"), and Atlantic Portfolio Analytics & Management, Inc. ("APAM") seeking, among other things, the avoidance and recovery of fraudulent transfers pursuant to Sections 544(b) and 550 of the Bankruptcy Code and Florida state law provisions. The focus of the Mataeka AP was the 1997 transfer of $6,500,000.00 from Evergreen Trust to Mataeka and the subsequent transfers of the funds to Knight, Huggins, and others.[9]

An indictment for grand larceny in the first degree was filed against Huggins and Knight in New York in August 2002 (New York County Indictment Number 04368/02). The criminal charges arose from allegations Knight and Huggins stole approximately $6,500,000.00 from Evergreen Trust. Two criminal trials were conducted, which did not result in verdicts. Huggins and Knight pled guilty to lesser charges in two Plea Agreements in December 2004. They were both sentenced to probation and fined.[10]

The trial of the Mataeka AP commenced on June 8, 2005 and continued through June 9, June 16, June 17, October 31, November 7, and November 8, 2005. A Memorandum Opinion and Judgment (collectively, "the Mataeka Judgment") were entered on March 22, 2006 awarding judgment to Cuthill and against the defendants.[11] Knight and Huggins were found

6. Doc. Nos. 1025, 1063, and 1146 (at p. 7). The Joint Plan of Reorganization, as Modified was confirmed on June 18, 2004. The reorganized Debtor became the "Liquidating Company" upon confirmation of the Plan.

7. Kime AP Doc. Nos. 46, 47, and 49. The Memorandum Opinion and Judgment were published at: *In re Evergreen Security, Ltd. (R.W. Cuthill, Jr., Trustee v. Harold James Kime and First Am. Life and Health Ins. Corp.),* 319 B.R. 245 (Bankr.M.D.Fla.2003).

8. Kime AP Doc. No. 90 (District Court Case: Civil Action No. 6:03–cv–01677–JA).

9. Evergreen created a wholly owned trust named Evergreen Trust in April 1994 for the purpose of pooling investor funds, purchasing various investments and holding some of Evergreen's assets.

10. Several other individuals involved with Evergreen have been convicted of or pled guilty to crimes relating to Evergreen's business practices. Martin Boelens pled guilty to federal crimes and was sentenced to a prison term of 46 months, three years of probation, and $70 million in restitution.

11. Mataeka AP Doc. Nos. 87, 88.

to be key players in the Evergreen Ponzi scheme and orchestrated the unlawful transfer of $6,500,000.00 from Evergreen Trust to themselves and various entities they controlled. Judgment was entered against Knight, Huggins, and Mataeka (found to be their alter ego), jointly and severally, in the amount of $4,889,053.90, plus prejudgment interest in the amount of $3,052,467.69, and against APAM in the amount of $2,500,000.00. The defendants appealed the judgment and the appeal is pending in the District Court.[12] Post-judgment interest is accruing.

Cuthill instituted Adversary Proceeding No. 03–00035–ABB against Knight, Huggins, APAM, and International Portfolio Analytics, Inc. ("IPAM") in 2003 seeking recovery of an alleged fraudulent transfer of approximately $213,000.00. The Mataeka AP defendants filed a motion to consolidate this adversary proceeding with the Mataeka AP, which was denied; their motion for reconsideration was denied. The undersigned is the presiding Judge in the Main Case, the Mataeka AP, and AP 03–00035.

### Attorney Admissions and Appearances

The law firm of GrayRobinson, P.A. ("GrayRobinson") has represented the Mataeka AP defendants throughout the Mataeka AP. GrayRobinson filed a Motion to Appear *Pro Hac Vice* moving for the admission of attorney Peter R. Ginsberg ("Ginsberg") "for purposes of appearing as co-counsel on behalf of Jon M. Knight, defendant herein, in the above-styled case only."[13] The Motion designates attorney Maureen A. Vitucci ("Vitucci") as the "person to whom the Court and counsel may readily communicate and upon whom papers may be served." It further states "the law firm of GrayRobinson ... acts as local counsel in this matter." Ginsberg is an attorney residing outside the State of Florida whose office is located in New York City. He is not licensed to practice law in Florida and is not admitted to practice in the District Court.

An Order was entered on April 7, 2005 granting the Motion and providing: "Peter R. Ginsberg is admitted *pro hac vice* to appear on behalf of Jon M. Knight in this adversary proceeding" and "Maureen A. Vitucci is local counsel and will be served all papers."[14] Ginsberg and GrayRobinson attorneys Vitucci and Scott W. Spradley ("Spradley") have subsequently appeared in the Mataeka AP, AP No. 03–00035, the Main Case, and three related involuntary cases. The admission of Ginsberg *pro hac vice* was not sought in any other case pending before this Court. Ginsberg's appearances in all cases other than the Mataeka AP are unauthorized and in violation of the Local Rules of this Court and Florida Rules of Professional Conduct.

Cuthill and Evergreen have been represented by the law firm of Gronek & Latham, LLP ("G & L"), with R. Scott Shuker ("Shuker") as lead counsel, throughout the Evergreen bankruptcy and adversary proceedings. The law firm of Smith Hulsey & Busey represents Cuthill in the Recusal Motion proceedings.

Shuker, Spradley, and Vitucci are members of the Florida Bar, the District Court Bar, and the Bar of this Court. Each has a high level of expertise in bankruptcy matters. Shuker is a named partner with G & L. Spradley has been a partner with GrayRobinson for nine years. Vitucci is an associate attorney with GrayRobinson

12. District Court Case No. 6:06–cv–00837–JA–DAB.

13. Mataeka AP Doc. No. 54.

14. Mataeka AP No. 55.

in its bankruptcy department and she formerly clerked for this Court. Ginsberg's primary practice area is criminal defense; he is not experienced in bankruptcy law.

### Judgment Collection Actions

The Mataeka AP litigation between Cuthill and the Movants was extremely contentious and the level of acrimony escalated post-judgment. The Mataeka AP defendants did not seek a stay of the Mataeka Judgment pending appeal and Cuthill instituted garnishment proceedings and discovery in aid of execution of the Mataeka Judgment. Cuthill issued writs of garnishment to Ginsberg and GrayRobinson as garnishees. GrayRobinson was holding approximately $1,095,983.47 in its trust account in the name of "J.A. Huggins FBO Mataeka." GrayRobinson was directed to turnover the funds to Cuthill on June 22, 2006.[15]

Evergreen, through Cuthill, filed three involuntary Chapter 7 bankruptcy petitions against the debtors Knight, Huggins and APAM on June 28, 2006: *In re Jon M. Knight,* Case No. 6:06–bk–01547–ABB; *In re J. Anthony Huggins,* Case No. 6:06–bk–01546–ABB; *In re Atlantic Portfolio Analytics & Management, Inc.,* Case No. 6:06–bk–01549–ABB. The undersigned is the presiding Judge in these three involuntary cases. Evergreen filed emergency motions in the Huggins and Knight involuntary cases seeking the appointment of an interim trustee. The involuntary debtors objected to the motions. A joint hearing on the emergency motions was conducted on July 12, 2006 and Evergreen's motions were granted. The United States Trustee appointed Leigh R. Meininger as the Interim Chapter 7 Trustee in the Huggins and Knight involuntary cases.

Shuker, at the July 12, 2006 hearing, candidly explained the purpose and goals in filing the involuntary bankruptcy cases. They were filed by Evergreen in connection with the Mataeka Judgment seeking to obtain assets owned by Knight, Huggins, and APAM. Cuthill believes Knight and Huggins have interests in off-shore trusts and those assets may be subject to turnover as property of the estate. Shuker was relying on *Lawrence v. Goldberg (In re Lawrence),* 279 F.3d 1294 (11th Cir.2002), which addresses asset turnover issues and civil contempt in bankruptcy proceedings.

A joint evidentiary hearing on the Knight and Huggins involuntary petitions and the debtors' answers to the petitions commenced in those cases at 1:00 p.m. on July 26, 2006.[16] The hearing was scheduled for half a day based upon the scheduling request and representation of the parties of the time required for presentation of their cases. The hearing did not conclude at the end of the court day and Ginsberg, appearing as counsel for the involuntary debtors, requested the hearing continue through that evening or the following week. The Court's schedule did not allow for such continuance. The hearing was adjourned and the parties' available dates through the end of the year were requested for resetting the hearing. Scheduling court time has been an ongoing difficulty in the Main Case and the Related Cases [17] due to the number of individuals involved.

---

15. Mataeka AP Doc. No. 140.

16. Section 303 of Title 11 sets forth against whom an involuntary case may be commenced, who may be a petitioning creditor, and how many creditors are required to file an involuntary case. An evidentiary hearing is held after an involuntary case is filed to determine whether the requirements of § 303 have been met.

17. *See infra* pp. 283–86 for the definition of "Related Cases."

### *The Recusal Motion*

The Movants filed the Recusal Motion the following day, July 27, 2006, in the Main Case.[18] The Recusal Motion consists of thirty-one pages of text with 596 pages of exhibits and contains various allegations of wrongdoing by the undersigned and Shuker. It was not filed under seal. The Movants request various relief, including recusal of the undersigned and the disqualification of G & L.

Vitucci is the only counsel who signed the Recusal Motion. The block beneath her signature sets forth her name and Spradley as GrayRobinson counsel representing "Mataeka, Ltd., International Portfolio Analytics, Inc., Atlantic Portfolio Analytics & Management, Inc., and J. Anthony Huggins." A block follows containing Ginsberg's name, his New York City firm address and contact information, and the statement "Attorneys for Jon M. Knight." Spradley read the Recusal Motion before it was filed and authorized its filing.[19] He understood at the time of filing he was subject to Federal Rule of Bankruptcy Procedure 9011.[20]

The Movants make the following principal allegations in the Recusal Motion:

1. "Judge Briskman presiding here is, himself, under investigation by the 11th Circuit Court of Appeals following *ex parte*, allegedly inappropriate communications with Mr. R. Scott Shuker...."[21]

2. "a series of dubious judicial actions taken in conjunction with Mr. Shuker in the Mataeka Adversary Proceeding and in the Involuntary Bankruptcy Proceedings."[22]

3. "inappropriate *ex parte* communications in the Mataeka Adversary Proceeding."

4. "threats by Mr. Shuker in the Involuntary Bankruptcy Proceedings to seek incarceration of the individual Movants as well as one of the individual Movants' attorneys, in violation of the Code of Professional Conduct governing the activities of attorneys"[23] and "... Mr. Shuker's ... promises of obtaining, the incarceration of the individual Movants ...";[24] and

5. "in the Mataeka Adversary Proceeding, threats to file a Bar grievance against the other individual Movant's attorney, also in violation of the Code of Professional Conduct."[25]

6. "This situation presents an impermissible appearance of impropriety and a lack of impartiality warranting recusal under 28 U.S.C. § 455(a) ..."[26]

7. "Gronek & Latham should be disqualified both for the reasons set forth above governing the need for impartiality in court proceedings and based upon Mr. Shuker's unethical threats of seeking, and promises of obtaining, the incarceration of the individual Movants and similar threats directed at Movants' counsels."[27]

8. "Disclosure of all *ex parte* communications and filings in this case and in all other adversary proceedings, contested matters and related cases in which the

---

**18.** Doc. No. 1508.

**19.** December 11, 2006 hearing transcript at p. 110, ll. 5–9.

**20.** *Id.* at ll. 10–17.

**21.** Recusal Motion at p. 2.

**22.** *Id.*

**23.** *Id.*

**24.** *Id.* at p. 3.

**25.** Recusal Motion at pp. 2–3.

**26.** *Id.* at p. 3.

**27.** *Id.*

Movants are parties, as well as the revocation of all Orders and Judgments rendered in this case and in all other adversary proceedings, contested matters and related cases in which the Movants are parties, also is necessary in order to rectify the taint that overshadows the proceedings at issue and in order to assure that all litigants receive fair and impartial justice." [28]

They further assert and allege:

"inappropriate plotting between Judge Briskman and Mr. Shuker about setting up parties to the litigation for arrest . . ." in *In re Advanced Telecommunications Network, Inc. v. Daniel W. Allen and David D. Allen,* Adv. Pro. No. 6:03–ap–122–KSJ.[29]

The undersigned failed to require proper proof from Mr. Shuker in the ATN case.[30]

". . . Defendants' counsel in [the ATN AP] filed a Complaint in the 11th Circuit concerning Judge Briskman's conduct. That Complaint, upon information and belief, remains the subject of an ongoing investigation." [31]

"Mr. Shuker approached [Knight and Huggins] outside the door of the Court and announced that, if the individual Movants did not have an acceptable settlement proposal to his office immediately, the individual Movants would 'end up in jail,' and that Mr. Huggins, 67–years old, 'would die in jail.' " [32]

"This was not the first time that Mr. Shuker had threatened to use what he apparently thought was his court-granted right to threaten imprisonment" in connection with their allegation Shuker threatened to have Spradley arrested for trespassing at a deposition.[33]

"Mr. Shuker continued to craft his own set of procedures, as endorsed by the Court." [34]

"On July 19, 2006, before the individual Movants could file responsive papers or appear for a hearing, Judge Briskman signed an Order, apparently presented *ex parte* to the Court by Mr. Shuker, for expedited discovery. This was accomplished without a hearing even though Mr. Shuker conceded in the motion that opposing counsel objected to the requested relief." [35]

"Over Movants' objection in the Mataeka Adversary Proceeding, the Court ordered the parties, at a point mid-way through the trial, to file *ex parte* proposed findings of fact and conclusions of law." [36]

"At the end of the trial, the Court again directed the filing of *ex parte* proposed findings of fact and conclusions of law." [37]

"The Court thereupon, without hearing from the individual Movants and without providing the individual Movants with an opportunity to review a proposed Order that Mr. Shuker had provided *ex parte* to the Court, executed the Order granting expedited discovery [in the involuntary cases]." [38]

---

28. *Id.*

29. Recusal Motion at p. 4.

30. *Id.* at p. 5.

31. *Id.* at p. 7. *See infra* p. 301–02 for the definition of "ATN AP."

32. *Id.* at p. 9.

33. Recusal Motion at p. 9.

34. *Id.* at p. 10.

35. *Id.* at pp. 10–11.

36. *Id.* at p. 12.

37. Recusal Motion at p. 13.

38. *Id.* at p. 15.

"Where a federal judge's conduct is the subject of an investigation, the public may reasonably question whether he will favor a crucial party or witness to the investigation who appears before him in an effort to curry favor with that party or witness. This public concern is exacerbated where, as here, the conduct at issue is not one that merely concerns private affairs but one that relates directly to the judicial processes, namely the integrity of trial transcripts, and a party's due process rights and liberty. The appearance of bias is unavoidable." [39]

"It is natural for a person under investigation to hesitate before doing anything that may compromise his position in that investigation. Here, the problem is all the more acute since both the presiding judge and opposing counsel are the key players in the investigation, may be witnesses against or in support of one another and the conduct in *Advanced Technologies* and the case at bar is strikingly similar, thus raising the appearance of partiality to a higher degree." [40]

"Indeed, the Bankruptcy Code specifically precludes the type of *ex parte* communications that the Court ordered on at least two occasions in the case at bar." [41]

"... the 11th Circuit has been scrutinizing the activities of Judge Briskman and Mr. Shuker...." [42]

"Mr. Shuker clearly felt empowered to threaten incarceration and the filing of Bar grievances notwithstanding the clear ethical impropriety of such actions. Similarly, he appears to have received a judicial nod to continue to ignore the automatic stay that, as a matter of law, should be in place in all of these proceedings." [43]

"[Mr. Shuker's] threats to secure the incarceration of the individual Movants as well as one of the lawyers for the Movants violated the Disciplinary Rules governing the conduct of attorneys ... It is also impermissible for a member of the Florida Bar to threaten another attorney with the filing of a bar complaint." [44]

The Movants request the following relief in the Recusal Motion: "... that this Court recuse itself and disqualify Gronek & Latham, LLP in all matters in this case and all other adversary proceedings, contested matters and related cases in which the Movants are parties, disclosure of all *ex parte* communications and filings in all matters in this case and all other adversary proceedings, contested matters and related cases in which the Movants are parties, and revocation of all Orders previously entered in all matters in this case and all other adversary proceedings, contested matters and related cases in which the Movants are parties and further relief as this Court deems just and equitable." [45] They contend disclosure of alleged *"ex parte* communications and filings ... is necessary in order to rectify the taint that overshadows the proceedings at issue and in order to assure that all litigants receive fair and impartial justice." [46]

39. *Id.* at p. 19.

40. *Id.* at p. 21.

41. Recusal Motion at p. 23.

42. *Id.*

43. *Id.* at p. 26.

44. *Id.*

45. Recusal Motion at pp. 29–30.

46. *Id.* at p. 3.

The "related cases" consist of *In re Jon M. Knight,* Case No. 6:06–bk–01547–ABB, Involuntary Chapter 7; *In re J. Anthony Huggins,* Case No. 6:06–bk–01546–ABB, Involuntary Chapter 7; *In re Atlantic Portfolio Analytics & Management, Inc.,* Case No. 6:06–bk–01549–ABB, Involuntary Chapter 7; R.W. *Cuthill, Jr., Trustee v. Mataeka, Ltd., et al.,* Adv. Pro. No. 6:01–ap–00232–ABB; and R.W. *Cuthill, Jr., Trustee v. International Portfolio Analytics, Inc., et al.,* Adv. Pro No. 6:03–ap–00035–ABB (collectively, the "Related Cases").

The Movants devote a considerable portion of the Recusal Motion disputing unfavorable rulings: (i) Insufficient evidence was presented to establish the need for the appointment of an interim Trustee in the Knight and Huggins involuntary cases. (ii) The expedited discovery orders should not have been entered in the Huggins and Knight involuntary cases. (iii) The Court failed to properly address automatic stay issues in the involuntary cases. (iv) The Mataeka Judgment contains "approximately 95 findings of fact and conclusions of law that either are totally without support in the record or directly contrary to the evidence at trial." [47] (v) The Mataeka Judgment damage award was miscalculated and inflated to benefit Shuker and Cuthill.[48] None of these contentions constitutes a proper basis for a recusal motion. They are matters that should have been addressed through a motion for reconsideration and/or their appeal.

Spradley, Ginsberg, and Vitucci presented the Recusal Motion to the Court through their signing, filing, and advocating of the pleading. Their actions are governed by Federal Rule of Bankruptcy Procedure 9011. They made certain certifications in presenting the Recusal Motion. An imposition of sanctions against them, their clients, and/or their firms may be appropriate if it is determined the pleading was presented in violation of Rule 9011. Their actions may also be subject to sanctions pursuant to the Court's inherent powers to address wrongful conduct.

### The Recusal Motion Proceedings: Pretrial Events

A Scheduling Order was entered on August 17, 2006 setting forth pretrial procedures and deadlines for the Recusal Motion proceedings.[49] It required, among other things, the parties file and serve no later than September 6, 2006 "a list of each party's exhibits to be offered at the Final Evidentiary Hearing" and "a list of each party's witnesses, including any expert witnesses and rebuttal witnesses, who may be called at the Final Evidentiary Hearing."

The parties timely filed their exhibit and witness lists on September 6, 2006.[50] The Movants identified eleven witnesses, including the undersigned, to be called at the final evidentiary hearing and forty-eight exhibits. A component of the Recusal Motion involves an alleged judicial complaint filed by attorney Phillip M. Hudson, III ("Hudson") against the undersigned and alleged communications between him and Shuker. The Movants' List did not disclose Hudson as a witness nor did it identify any exhibits relating to Hudson or his alleged actions. Ginsberg, Spradley, or Vitucci were not listed as witnesses. Evergreen did not list Hudson as a witness.

---

**47.** Recusal Motion at p. 13. The Movants devote five pages alone to protests of the Mataeka Judgment.

**48.** *Id.* at p. 18.

**49.** Doc. No. 1510.

**50.** Doc. Nos. 1519, 1520.

A pretrial conference was scheduled for September 13, 2006. The Movants, two days prior to the conference, sought a stay of the proceedings on the basis their mandamus petition was pending in the District Court. Their motion for stay was denied.[51] An Order was entered detailing the exhibit requirements set forth at the pretrial conference.[52] The parties filed their expert witness disclosures designating Justice Major B. Harding ("Harding") as the Movants' expert and Steven Lubet, Professor of Law at Northwestern University School of Law ("Lubet"), as Evergreen's expert.[53]

The final evidentiary hearing on the Recusal Motion was originally set to begin on October 24, 2006.[54] The parties jointly requested a continuance of the final evidentiary hearing date due to the unavailability of their respective expert witnesses and Ginsberg.[55] Their continuance request was granted in open Court on October 11, 2006 and the trial was reset for November 28 and 29, 2006 based upon the earliest available dates for the parties, their witnesses, and the Court.[56]

The Movants, just days before the trial commencement, sought to continue the trial through their Emergency Motion for Continuance of the Final Evidentiary Hearing and Certificate of Necessity filed on November 15, 2006.[57] They stated Ginsberg required a two-week continuance "in order to properly prepare for the depositions of witnesses and to properly prepare for the final evidentiary hearing."[58] The letter from Ginsberg's physician accompanying the motion reflects Ginsberg could travel to appear on November 28th, but he was unable to travel for the pretrial depositions of the Evergreen witnesses Lubet, Shuker, and G & L associates. Evergreen objected to the continuance request on the grounds Ginsberg's presence at the depositions was not necessary as GrayRobinson counsel could attend and Ginsberg could travel for the start of the trial on November 28, 2006.[59]

The Movants' motion was granted in part and denied in part at the November 20, 2006 hearing.[60] Evergreen disclosed at the hearing Lubet was not available to appear, as previously scheduled, on November 28, 2006. The trial start date was continued to November 29, 2006 with expert witnesses to be called first due to their limited availability. Fact witnesses were scheduled for December 11, 2006. The Court allowed discovery to remain open so the Movants could reschedule the remaining depositions in preparation for the fact witness portion of the trial.[61] Trial exhibits were directed to be exchanged between the parties by November 22, 2006.

The Movants, without leave of Court, filed a Supplement to Witness List on November 21, 2006—just days before the commencement of the final evidentiary hearing—listing Hudson and Spradley as additional witnesses.[62]

51. Doc. Nos. 1522 and 1524.

52. Doc. No. 1524.

53. Doc. Nos. 1526, 1527.

54. Doc. No. 1511.

55. Doc. No. 1531.

56. See Doc. No. 1602 transcript of October 11, 2006 hearing.

57. Doc. No. 1570.

58. Id. at ¶ 8.

59. Doc. No. 1574.

60. See Doc. No. 1596, transcript of November 20, 2006 hearing.

61. Id. at p. 23, ll. 10–14.

62. Doc. No. 1587.

### The Recusal Motion Proceedings: Trial

The Recusal Motion trial commenced on November 29, 2006. Harding and Lubet testified as experts discussing the standards governing judicial conduct and recusal. Harding addressed standards governing the conduct of counsel. Evergreen's direct examination of Lubet took approximately thirty minutes.[63] Ginsberg conducted an extensive cross-examination of Lubet lasting almost three hours.[64] Ginsberg did not conclude the examination at the end of the trial day and stated he needed another hour to complete his examination.[65] His cross-examination included a number of questions involving hypothetical criminal acts and factual allegations irrelevant to the Recusal Motion delaying the proceedings.[66] The experts' testimony is of little value in the resolution of the Recusal Motion, which turns upon specific alleged facts. The Court asked for Lubet's available dates for completion of Ginsberg's cross-examination.

The Movants sought to conduct a telephone deposition of Hudson.[67] Evergreen responded with a motion to exclude Hudson as a witness and to preclude a telephonic deposition of him.[68] Evergreen's motion to exclude Hudson was granted at the December 7, 2006 hearing and the Movants' motion to allow a telephonic deposition of him was deemed moot.[69]

The final evidentiary hearing reconvened on December 11, 2006. Lubet appeared for the completion of the cross-examination, but he had not been scheduled to be present. Ginsberg was not prepared to complete his cross-examination. Lubet was released for the day. The Movants called Shuker, Spradley, and Knight as fact witnesses in their case in chief.[70] Evergreen called Shuker as its only fact witness. The Movants stated, after the parties completed the presentations of their cases in chief, they intended to present a rebuttal case in which they would call Spradley, Vitucci, and Hudson, but were not prepared to go forward with the rebuttal case on that day.[71] The Court permitted the trial to be continued for the Movants to present their rebuttal case. Lubet was permitted to be recalled, telephonically if necessary, for Ginsberg to finish his cross-examination.

The conclusion of the trial was set for January 29 and 30, 2007 based upon the parties' and the Court's availability. The Movants, on December 28, 2006, filed a Motion for Allowance of Telephone Trial Testimony of Hudson seeking to have Hudson testify via telephone as a rebuttal witness to rebut Shuker's testimony.[72] This motion was their second attempt to have Hudson as a witness. Evergreen's

---

63. *See* November 29, 2006 transcript at pp. 7–29.

64. *See* November 29, 2006 transcript at pp. 29–96.

65. November 29, 2006 transcript at p. 96, line 18.

66. *See, e.g.,* November 29, 2006 transcript at pp. 29–36, 38–40.

67. Doc. No. 1594.

68. Doc. No. 1598.

69. *See* Doc. No. 1636 (Order Granting Evergreen Security, Ltd.'s Motion to Exclude Philip Hudson, III, as a Witness and Preclude Telephonic Deposition).

70. *See* December 11, 2006 transcript at p. 167. The Movants' oral motion for reconsideration of the Order entered on October 30, 2006 excluding the undersigned as a witness was denied.

71. December 11, 2006 transcript at pp. 226–27.

72. Doc. No. 1612.

motion to exclude Hudson and other rebuttal witnesses [73] was granted at the January 17, 2007 hearing based upon Hudson was not a proper rebuttal witness and the Movants failed to disclose the requested witnesses pursuant to the Scheduling Order.[74]

The Court inquired at the January 17, 2007 hearing whether the Movants desired to recall Lubet and were directed to respond by Noon, January 19, 2007. The Court also inquired whether the Movants wanted to recall Harding since he testified before the fact witnesses and the Court wanted to ensure the Movants had an opportunity to fully examine him. The parties agreed only one day, January 29th, was needed for the completion of the trial. The Court inquired of Spradley whether GrayRobinson continued to support the Recusal Motion. Spradley responded the firm "still supports some facets of the motion" and reserved his right to further consider the question. Spradley stated the firm did not support Vitucci being called as a witness.

Ginsberg sent a letter [75] to the Court's Courtroom Administrator Susan E. Coberly ("Coberly") on January 22, 2007 apparently retreating from certain allegations made in the Recusal Motion:

Other matters have been raised in the instant hearing, including actions by Mr. Shuker in relation to parties and counsel. However, we do not believe that any evidence has been entered regarding a relationship between your Honor and Mr. Shuker that show that you endorsed such actions, and thus believe that, although the activities were inap-

propriate, they do not serve as a basis for the relief requested by the Motion. We believe that Mr. Shuker was simply acting on his own at those times.

Ginsberg requested the Court make certain disclosures and, "if disclosure is made," the Movants would agree to resolve the Recusal Motion without further hearing through "legal submissions" or withdrawal of the Recusal Motion, "depending upon the disclosures themselves." Ginsberg reasserted the examination of Lubet had not been completed and the Movants may have a need to recall Harding. The Movants did not retract any portion of the Recusal Motion.

Ginsberg sent a second letter to Coberly via email on Friday, January 26, 2007 stating the Movants did not intend on going forward with the trial "unless ordered to do so by the Court," with the one exception they would offer a final document as an exhibit.[76]

The parties, with counsel, were present for trial on January 29, 2007. Lubet was present via videoconference. The Movants did not have any further examination of Lubet despite their repeated insistence Lubet be recalled for the completion of Ginsberg's cross-examination. The Movants' failure to examine Lubet is further evidence of their delay tactics. Evergreen had no questions for Lubet. The Court asked Lubet certain questions. Ginsberg offered into evidence an affidavit allegedly prepared by Hudson. Evergreen's objection to the exhibit was sustained on the basis it was not disclosed in the Movants' List. The parties rested.

---

**73.** Doc. No. 1615.

**74.** Doc. No. 1621. The Florida Rules of Professional Conduct prohibit Ginsberg and Vitucci, who have both actively appeared as advocates for the Movants throughout the Recusal Motion trial, from being witnesses.

**75.** The Court docketed the letter as Doc. No. 1628 and Evergreen's response as Doc. No. 1629.

**76.** The Court docketed the correspondence as Doc. No. 1632.

Ginsberg's actions during his cross-examination of Lubet were consistent with his comportment throughout the Evergreen and Recusal Motion proceedings. His examinations were excessive and focused on irrelevancies. He was confrontational and disrespectful to the Court and opposing counsel. He was not ready to present a rebuttal case on December 11, 2006 and delayed the conclusion of the trial by seven weeks. These actions were part of his and the Movants' overall tactic to delay and mire the proceedings.

### Mandamus and Appellate Proceedings

The Movants, during the Recusal Motion proceedings, filed three petitions with the District Court requesting writs of mandamus be issued for various reasons in connection with the Recusal Motion. The Movants repeated in their petitions many of the allegations contained in the Recusal Motion. Each of the petitions was signed by Vitucci and filed jointly by GrayRobinson and Ginsberg.

The Movants filed a Petition for Writ of Mandamus [77] on August 14, 2006 instituting *Mataeka, Ltd., et al. v. United States District Court, et al.,* Case No. 6:06–cv–01210–JA–KRS. They filed a Supplemental Petition for Writ of Mandamus seeking a Writ of Mandamus requiring the undersigned's recusal from this case and all related proceedings and to refrain from ruling on the Recusal Motion because the Movants intended on calling the undersigned as a witness at the final evidentiary hearing on the Recusal Motion. [78]

The District Court's September 20, 2006 Order denied the original petition and supplemental petition. [79] The District Court found no basis for the issuance of a writ of mandamus:

Mandamus is a drastic remedy to be invoked only in extraordinary circumstances. Extraordinary circumstances justifying the issuance of a writ of mandamus may exist when a court has exceeded or improperly refused to exercise its jurisdictional power or otherwise abused its discretion. Petitioners assert that the bankruptcy judge's refusal to disqualify himself in response to the motion constitutes such an extraordinary circumstance. The bankruptcy judge has not, however, refused to rule on the motion to disqualify ... There is no reason to believe that a ruling will not be made promptly following the hearing. If, upon entry of the order, Petitioners believe the bankruptcy judge's decision to be erroneous, they have the readily available remedy of appealing the decision. [80]

The Movants attempted to compel the undersigned to appear as a witness through an appeal and a mandamus petition. Evergreen's motion to exclude the undersigned as a witness, after a duly-noticed hearing, was granted by the October 30, 2006 Order ("Exclusion Order"). [81] The Movants appealed the Exclusion Order instituting Case No. 6:06–cv–1867–Orl–28KRS in the District Court. They filed a

---

**77.** District Court Case No. 6:06–cv–01210–JA–KRS Doc. No. 1.

**78.** *Id.* Doc. No. 3. The Movants, two days before the pretrial conference, sought a stay of the Recusal Motion proceedings pending the disposition of the District Court mandamus proceeding (Doc. No. 1522). Their motion was denied by Order entered on September 20, 2006 (Doc. No. 1528).

**79.** District Court Case No. 6:06–cv–01210–JA–KRS Doc. No. 23.

**80.** *Id.* at p. 2 (*citations omitted*).

**81.** Doc. Nos. 1537, 1550.

Motion to Stay Appeal[82] requesting the appeal briefing schedule be stayed until a final determination was made on the Recusal Motion. The District Court's December 22, 2006 Order found the Exclusion Order to be an interlocutory order, denied the Movants leave to appeal the Order, dismissed the appeal, and denied the Movants' Motion to Stay Appeal as moot.[83]

The Movants filed a third mandamus petition in Case No. 6:06–cv–01210–JA–KRS requesting the District Court issue a Writ of Mandamus directing the undersigned to appear as a witness in the Recusal Motion trial and at deposition.[84] The petition was denied because the Movants were required to initiate a new case and Case No. 6:06–cv–01210–JA–KRS was closed.[85] The Movants re-filed the petition as a new case, Case No. 6:06–cv–01807–JA–JGG. The December 26, 2006 Order denied the petition and closed the case.[86]

### GrayRobinson Withdrawal Motions

GrayRobinson filed two motions to withdraw as counsel in the Main Case: the first was filed in the midst of the Recusal Motion trial and the second was filed on the eve of the conclusion of the trial. The first Motion to Withdraw as Counsel from the further representation of Huggins, APAM, IPA, and Mataeka and as local counsel to Ginsberg due to "irreconcilable differences" was filed on October 20, 2006[87] Gray Robinson asserted it is not counsel of record for Knight, but "is local

counsel of record [to] Ginsberg in his representation of Jon M. Knight."[88] GrayRobinson and Ginsberg, as established by their pleadings and appearances, have jointly represented Huggins, Knight, APAM, IPA, and Mataeka in the Evergreen case and the Related Cases.

Spradley stated, at the November 9, 2006 hearing, the parties had resolved the withdrawal motion through a Stipulation which provides: (i) Huggins consents to withdrawal and intends to proceed *pro se;* (ii) Gray Robinson shall withdraw as counsel for Mataeka, APAM, IPA, and Huggins; (iii) Ginsberg will continue to represent Knight, APAM, IPA, and Mataeka; and (iv) "GrayRobinson shall serve as local counsel to Ginsberg in the Evergreen case and the related cases but will not otherwise represent any party in the Evergreen case or the related cases."[89] The Stipulation is incongruous and contravenes the applicable Local Rules and disciplinary rules. It is not possible for GrayRobinson to have irreconcilable differences requiring its withdrawal yet seek to remain as local counsel for Ginsberg. The Motion was denied based upon GrayRobinson may not simultaneously serve as Ginsberg's local counsel and sever its relationships with the actual clients—Huggins, Knight, Mataeka, APAM, and IPA. GrayRobinson withdrew the Motion in open Court, but did not file a written notice of withdrawal.

82. District Court Case No. 6:06–cv–1867–Orl–28KRS Doc. No. 5.

83. *Id.* Doc. No. 8.

84. District Court Case No. 6:06–cv–01210–JA–KRS Doc. No. 24.

85. *Id.* Doc. No. 25.

86. District Court Case No. 6:06–cv–1807–Orl–28JGG Doc. No. 3 at p. 3 *(internal citations omitted):* "In the instant petition, Petitioners seek a writ compelling Judge Briskman to

reverse himself and rule in their favor on a motion which they suggest he should not have ruled on in the first instance. Their position is both inconsistent and wholly lacking in merit."

87. Doc. No. 1547, ¶ 12.

88. *Id.* at ¶¶ 4, 8, 10.

89. Doc. No. 1561.

GrayRobinson's second withdrawal motion was filed late in the day on Friday, January 26, 2007.[90] The motion states: "Irreconcilable differences have developed such that GrayRobinson is unable to continue to represent the interests of the Movants." No withdrawal motions were filed in any of the Related Cases at that point.

A hearing was held after the conclusion of the Recusal Motion trial on January 29, 2007. Spradley informed the Court GrayRobinson would be filing withdrawal motions in the related cases. The Court inquired whether GrayRobinson, through the withdrawal motion, was withdrawing its support of the Recusal Motion. Spradley responded, "No ... we can't support the motion." Ginsberg stated he was surprised by the withdrawal motion. The withdrawal motion was conditionally granted in open Court.[91] Evergreen, post-hearing, filed a limited objection, requesting certain conditions for withdrawal. GrayRobinson was allowed to withdraw in the Evergreen Case with certain conditions.[92]

GrayRobinson filed motions to withdraw as counsel for the defendants in Adversary Proceeding 03–00035 and for each of the involuntary debtors in the involuntary Chapter 7 cases on February 4, 2007. GrayRobinson sought to withdraw because: (i) "Irreconcilable differences have developed such that GrayRobinson is unable to continue to represent the interests of Knight, Huggins, IPA and APAM." (ii) "GrayRobinson has irreconcilable differences with Ginsberg, with those irreconcilable differences requiring that GrayRobinson no longer associate with Ginsberg in

this or any case for the purpose of representing mutual clients." (iii) "Moreover, at a hearing conducted in this court on January 29, 2007 ... Ginsberg made certain statements in his oral objection to GrayRobinson's withdrawal in that case, which can only be construed as falsely insinuating wrongdoing by GrayRobinson ... GrayRobinson cannot and will not continue its association with Ginsberg in view of the misleading nature of Ginsberg's statements, combined with the unstated conclusions Ginsberg apparently intended to be drawn from those statements."[93] Similar statements were made in the withdrawal motions filed in the involuntary cases.

Spradley's February 7, 2007 email to Coberly, with copies to opposing counsel, stated Huggins did not consent to GrayRobinson's withdrawal.[94] The communication was treated as a motion for reconsideration of the Order allowing withdrawal. GrayRobinson filed notices on February 12, 2007 in the Main Case and the three involuntary cases stating Knight and Huggins did not object to GrayRobinson's withdrawal and Knight engaged substitute counsel. Substitute counsel for Knight filed notices of appearance in the Knight and APAM involuntary cases. GrayRobinson's motion for reconsideration and withdrawal motions were granted at the February 13, 2007 hearing.

### Status of the Related Cases

The Huggins, Knight and APAM involuntary cases and Adversary Proceeding 03–00035 were held in abeyance pending the resolution of the Recusal Motion. The joint trial on the Huggins and Knight in-

---

90. Doc. No. 1630.

91. Evergreen was directed to file a written response and Huggins was to file an affidavit evidencing his consent to GrayRobinson's withdrawal.

92. *See* Order entered on February 5, 2007 (Doc. No. 1638).

93. Doc. No. 52 in AP 03–00035 at ¶¶ 2–4.

94. Docketed by the Court as Doc. No. 1639.

voluntary petitions and the debtors' answers was commenced, but not completed due to the Recusal Motion. A hearing was held on August 14, 2006 in the APAM involuntary case on Evergreen's motion to continue the trial. Spradley and Shuker agreed in open Court the Recusal Motion should be addressed before the involuntary cases are advanced. Evergreen's motion to continue was generally granted. The joint trial of the three involuntary cases was completed on February 22, 2007.[95]

Evergreen filed a Rule 9011 Motion in the Main Case seeking sanctions against the Movants and their counsel pursuant to Federal Rule of Bankruptcy Procedure 9011[96] and a Motion for Fees and Costs seeking sanctions and costs pursuant to 28 U.S.C. Section 1927.[97]

### Analysis of Recusal Motion Allegations

#### • Judicial Council of the Eleventh Circuit Court of Appeals

A complaint to recover alleged fraudulent transfers was filed against Daniel W. Allen and David D. Allen in the adversary proceeding *Advanced Telecommunications Network, Inc. v. Daniel W. Allen and David D. Allen*, AP No. 6:03–ap–122–KSJ ("ATN AP"). Shuker is counsel for the debtor/plaintiff ATN and Hudson is counsel for the defendants. The ATN AP and the underlying main case was reassigned to the Honorable Karen S. Jennemann on September 20, 2004.

The Movants allege Hudson filed a judicial complaint against the undersigned in relation to events in the ATN AP and is the subject of an investigation by the Judicial Council of the Eleventh Circuit Court of Appeals. The Movants contend the alleged investigation renders the undersigned not impartial and requires recusal. The Movants recite the term "investigation" twelve times and make fourteen implications of the existence of an investigation in the Recusal Motion.

Spradley has no first-hand knowledge of the ATN AP.[98] Shuker, the Movants' only fact witness regarding their judicial investigation allegations, testified he has no knowledge of a complaint.[99] The Movants conceded they have no evidence of a judicial investigation.[100] The Movants reiterated their judicial investigation allegations in their mandamus petitions.[101] The District Court stated in its September 20, 2006 Order:

> Petitioners also allege a basis for recusal that the Eleventh Circuit Court of Appeals has undertaken an investigation of the bankruptcy judge for engaging in ex parte communications during the course of another proceeding. Notwithstanding these allegations, there is no evidence before this court that such an investigation has been undertaken, let alone that there has been a finding of wrongdoing on the part of the judge. If there is such an investigation, and it results in a

95. At the conclusion of the Recusal Motion hearing on January 29, 2007, the Court addressed the scheduling of the trials for the involuntary cases and the Motion for Civil Contempt and Motion to Compel Production of Documents from Wanda G. Knight filed by Evergreen in the Knight involuntary case (Doc. No. 52). The Motion for Civil Contempt was granted by separate order.

96. Doc. No. 1542.

97. Doc. No. 1624.

98. December 11, 2006 transcript at p. 102, ll. 22–25.

99. December 11, 2006 transcript at p. 49, ll. 4–10.

100. December 11, 2006 transcript at p. 47, ll. 8–22.

101. District Court Case No. 6:06–cv–01210–JA–KRS Doc. Nos. 1, 3.

finding that the bankruptcy judge engaged in ex parte communications relevant to these proceedings, Petitioners may bring the matter to the attention of this court by renewing their Petition for Writ of Mandamus.[102]

The Movants did not renew their petition nor offer any evidence to the District Court in support of their allegations. The Movants did not establish their allegations.

### • Discovery Orders in the Huggins and Knight Involuntary Cases

Cuthill, through Shuker, filed emergency motions in the Knight and Huggins involuntary cases on July 17, 2006 seeking orders compelling the involuntary debtors to produce documents and shortening the response time to the document request.[103] Attached to the motions were requests detailing the documents to be produced and email communications with opposing counsel setting forth the involuntary debtors would not agree to expedited discovery. Cuthill requested Knight and Huggins be required to produce the responsive documents "to Cuthill two (2) business days prior to the contested hearing on the involuntary petition." The evidentiary hearing on the Knight and Huggins involuntary petitions and answers was set for July 26, 2006.[104]

A G & L attorney served the emergency motions on GrayRobinson by electronic transmission, facsimile, and first-class mail, on Huggins and Knight by first-class mail, and on the Chapter 7 Trustee by facsimile and first-class mail.[105] Coberly, at the Court's direction, called GrayRobinson on July 18th to schedule a hearing on the emergency motions for either July 18th or July 19th and spoke with Vitucci. Spradley was on vacation and not available to appear for a hearing. Another GrayRobinson attorney could have appeared for Spradley, but no attorney was made available.[106] GrayRobinson did not file a response to the emergency motions. The Court reviewed the motions and entered Orders on the papers on July 19, 2006.[107]

The Movants allege they were not provided proper notice of the emergency motions, were not provided an opportunity to respond or appear at a hearing, and Shuker and the Court engaged in "ex parte communications."[108] They assert: "Neither individual Movant was provided an opportunity to serve opposing papers. One of the individual Movant's attorney, Peter R. Ginsberg, never received notice of any hearing regarding the motion; the other lawyer, Mr. Spradley, was on vacation when his office received a call from the Court on July 18, 2006 seeking to

---

102. District Court Case No. 6:06–cv–01210–JA–KRS Doc. No. 23 at pp. 2–3.

103. Doc. No. 14 in Case No. 6:06–bk–01547–ABB and Doc. No. 14 in 6:06–bk–01546–ABB.

104. This trial date was set by the agreement of the parties during the July 12, 2006 hearing on the appointment of an interim trustee. The Court has informed the parties in the involuntary cases several times it is important to move the involuntary cases forward quickly because it is a heavy burden on the debtors to have the cases pending. Evergreen was ready to begin the trial immediately, but Spradley informed the Court he was sched-

uled to take a family vacation during the week of July 16, 2006. The Court took Spradley's vacation schedule into consideration in scheduling the joint trial for July 26, 2006.

105. Doc. Nos. 16 in Case Nos. 6:06–bk–01547–ABB and 6:06–bk–01546–ABB.

106. December 11, 2006 transcript at p. 142, ll. 3–24.

107. Doc. Nos. 18 in Case Nos. 6:06–bk–01547–ABB and 6:06–bk–01546–ABB.

108. Recusal Motion at p. 15.

schedule a hearing on July 19, 2006." [109]

GrayRobinson was the only counsel of record in the Knight and Huggins involuntary cases. Ginsberg has not been admitted to appear *pro hac vice* as counsel in those cases nor has he sought to be admitted *pro hac vice*. Ginsberg's *pro hac vice* motion filed in the Mataeka AP indicates Vitucci is the responsible person for all papers to be served on GrayRobinson. Ginsberg was not entitled to notice of the emergency motions. GrayRobinson was given an opportunity to have an attorney present for a hearing on either July 18th or July 19th, but declined to make an attorney available. Waiting to conduct a hearing upon Spradley's return from vacation was not an option. The discovery requests would have been moot due to the impending trial date of July 26, 2006.

The Movants complain Shuker presented one-sided proposed orders to the Court *"ex parte"* that were blindly entered. It is the general practice of this Court to have the prevailing parties submit proposed orders. The Court reviews each proposed order and determines whether the order appropriately sets forth the relief to be granted or if revision is required. Shuker, representing the prevailing party, submitted proposed orders granting the emergency relief. The proposed orders were reviewed and revised. The Orders entered on July 19, 2006 granted Evergreen's motions, but the relief granted differs from the relief sought in the emergency motions and the proposed orders.

The Orders direct the parties to exchange exhibits and evidence to be offered and disclose the qualifications and scope of testing of any expert witnesses within two days of the trials on the involuntary petitions. The Court did not engage in *ex parte* communications in the involuntary cases. The Movants have failed to establish any improprieties regarding the emergency discovery motion proceedings.

● *Conduct of Counsel: Knight Deposition In Aid of Execution*

The Movants contend Shuker acted improperly and violated the disciplinary rules governing attorney conduct in the Evergreen proceedings. The Movants allege Shuker's actions were "court-granted" and he was "empowered" by the Court. The Evergreen proceedings before this Court are civil matters. Shuker has not been found to have committed any violations of the disciplinary rules or other rules governing the conduct of counsel in this Court.

A deposition of Knight in aid of execution of the Mataeka Judgment was scheduled for June 5, 2006 to be conducted by Shuker at Shuker's office, with a deposition of Huggins to follow. Shuker, Ginsberg, appearing as counsel for Knight, and Spradley, appearing as counsel for Huggins, APAM, and Mataeka, were present. The Movants allege Shuker wrongfully threatened to have Spradley arrested for trespass if he intended to be present for Knight's deposition. Shuker acknowledged he asked Spradley to leave, but did not threaten him with arrest or use the word "trespass." [110]

The deposition transcript does not reflect the exchange between Shuker and Spradley.[111] Shuker and Spradley characterize the exchange differently. Shuker

---

109. *Id.*

110. December 11, 2006 transcript at p. 190–91, ll. 17–25, ll. 1–15.

111. *See* Movants' Exh. No. 11 (partially admitted into evidence). The Movants reference p. 79, but p. 79 merely contains a recitation by Ginsberg of what was allegedly said off the record at the beginning of the deposition.

sent an email to Spradley on June 6, 2006 explaining his words were "in jest."[112] Spradley responded by email stating he took Shuker's statements to be serious.[113] It is impossible to ascertain the true tenor of counsels' exchange from the evidence presented. It is understandable why Shuker would not want counsel for Huggins, a joint Mataeka judgment debtor, present for the deposition of Knight.[114] Shuker wanted to explore each defendant's position regarding certain matters without the witness being influenced by the other, particularly in regard to their differing positions as to the money held in trust by GrayRobinson.[115]

Shuker was upset and his statements to Spradley were probably overly aggressive. The Mataeka AP was a hard fought case taking several years to reach judgment and Evergreen is now attempting to collect on its judgment. Shuker's frustration surfaced through his words. Shuker admitted he lost his temper.[116] He apologized to Spradley who acknowledged the apology on June 6, 2006.[117] Shuker believed the matter had been resolved. Counsels' relationship continued normally with no mention of the deposition incident until the Recusal Motion was filed.[118]

Spradley conceded there are no facts to support the allegation the undersigned merely had to be telephoned to approve Spradley's arrest or Shuker had a "court-granted right to threaten imprisonment."[119] Shuker did not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. The Movants have failed to establish Shuker's actions were improper, violate any rule of professional conduct, or any basis exists for the disqualification of his firm.

● *Conduct of Counsel: Deposition of Charles Baron*

The Movants contend Shuker threatened to file a bar grievance against Ginsberg during a deposition of Charles Baron and such threat constitutes a violation of the disciplinary rules governing Florida counsel.[120] They contend the threat was precipitated by Ginsberg's objection to "Mr. Shuker's persistent interruption of a deposition witness who was providing re-

---

**112.** Movants' Exh. No. 12.

**113.** *Id.*

**114.** *See* December 11, 2006 transcript at pp. 188–89, ll. 17–25, ll. 1–2 where Shuker states: "I viewed this as a depo in aid. The case was over. It was on appeal or—yeah, it was on appeal and so we weren't in the main case. We were in a supplemental proceeding in which in my mind, rightly or wrongly, seemed to be a private matter, not part of the underlying trial that would be open to all the parties. This was us trying to collect money from Mr. Knight, and so I didn't view that as the same type of open proceeding as you would a regular deposition."

**115.** December 11, 2006 transcript at pp. 189–190.

**116.** *Id.* at p. 192, ll. 19–23. Shuker testified: "I lost my temper at the deposition. I was impolite to Mr. Spradley and he didn't deserve to be treated that way. So I wanted to clarify that I did not threaten anything but that I was sorry for losing my temper and being impolite to him."

**117.** Movants' Exh. No. 12.

**118.** December 11, 2006 transcript at p. 193.

**119.** December 11, 2006 transcript at pp. 103–7. "As to the literal words, that there was a court—do I have evidence of a court order grant of authority, no, I don't have evidence of that." p. 106 at ll. 23–25; pp. 146–147. "The Court: In researching this motion, did you research all the cases where I held people in contempt or incarcerated them? Spradley: I don't believe that I have access to all that information." p. 146, ll. 18–22.

**120.** Recusal Motion at p. 10.

sponses that Mr. Shuker did not welcome." [121]

Charles Baron was the expert witness for the Mataeka AP defendants and Shuker conducted a deposition of him on August 9, 2005. Spradley and Ginsberg were present. The transcript reflects the deposition events were quite different than described by the Movants in their Recusal Motion. Shuker asked the witness whether he knew Knight and Huggins were not trustees of the Evergreen Trust.[122] Ginsberg repeatedly interrupted the witness in an apparent attempt to prevent him from answering the question.[123] Ginsberg, while the question was pending, attempted to stop the deposition and "take a break." [124] He directed the witness, "Let's go" and the witness stood.[125] Shuker, frustrated, responded: "I do not consent to this being interrupted. I do not consent to you violating every ethical rule and—rule in this state, and I'll file a bar grievance as we go. That is so wrong. I'm in the middle of a question. If you don't happen to like—." [126] The deposition ultimately continued with the witness sitting down and answering the question.

The Movants contend "Mr. Shuker clearly felt empowered to threaten . . . the filing of Bar grievances notwithstanding the clear ethical impropriety of such actions." [127] Shuker raised the issue of a bar grievance in frustration with Ginsberg's obstreperous behavior. Shuker did not present, participate in presenting, or threaten to present disciplinary charges against Ginsberg to obtain an advantage in any civil matter. The Movants have failed to establish Shuker violated any rule of professional conduct, committed any impropriety, or any grounds exist for the disqualification of G & L.

● *Conduct of Counsel: Communications Outside Courtroom*

The Movants contend Shuker had improper communications with Huggins and Knight in that he "threatened" them. They allege after the hearing on July 12, 2006 at which Evergreen's motion to appoint an interim trustee in the Knight and Huggins involuntary cases was granted: "Mr. Shuker approached [Knight and Huggins] outside the door of the Court and announced that, if the individual Movants did not have an acceptable settlement proposal to his office immediately, the individual Movants would 'end up in jail,' and that Mr. Huggins, 67–years old, 'would die in jail.' " [128] Shuker directed these statements to Spradley in the hall outside of the courtroom. Knight and Ginsberg were nearby and overheard the statements; Huggins was not present.[129]

Knight understood Shuker's statements related to civil matters and not criminal as is reflected in Knight's cross-examination testimony:

121. *Id.*

122. Movants' Exh. No. 10 at p. 41, ll. 16–25.

123. *Id.* at pp. 41–43.

124. *Id.* at p. 42, l. 25.

125. *Id.* at p. 43, l. 8.

126. Movants' Exh. No. 10 at p. 43–44, l. 25, ll. 1–5. Ginsberg, apparently insisting on a break stated, "He will return." Shuker responded: "I want him to sit down and answer the question I asked. If you want to do that, you do with the Florida Bar, the New York Bar, and with every other ethical thing governing you. You cannot take a witness out in the middle of a question. If you want to do so, you do so at your own bar license, pal." P. 45, ll. 5–12.

127. Recusal Motion at p. 26.

128. *Id.* at p. 9.

129. December 11, 2006 transcript at pp. 161–62.

Q: And when Scott Shuker posed the prospect of you and Mr. Huggins going to jail, you understood, didn't you, that that would be a consequence of civil contempt and not a criminal charge?

A: This is a civil proceeding, so I would assume that. That was to—obviously prior to—I believed he was involved in the criminal case but in this case it certainly wasn't a criminal case. I wouldn't imagine that you would have a bankruptcy judge issuing a criminal contempt charge.

Q: So civil contempt was the only mechanism you could imagine?

A: Me personally, yes.[130]

Shuker's statements were not threats relating to criminal charges. They were assertive statements directed at opposing counsel and overheard by Knight relating to possible civil contempt. Shuker's statements were communications between lawyers addressing a pending case. His intention in approaching opposing counsel was an attempt to open settlement discussions. His statements were based upon *Lawrence v. Goldberg,* in which the debtor was imprisoned for civil contempt for failing to turnover trust property constituting property of the estate.[131] Shuker candidly explained the strategies of the involuntary cases in open Court in July 2006 and that relief would be sought pursuant to *Lawrence v. Goldberg* if relief was granted and the involuntary debtors failed to turn over property of the estate.

Even though Shuker based his comments on case law relevant to Evergreen's collection efforts and was attempting to start a settlement dialogue, his words could have been otherwise interpreted. Incarceration is an extraordinary consequence. Shuker's words, instead of opening discussions, could have alienated opposing counsel, Knight, and Huggins and contributed to the contentious atmosphere.

Shuker did not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. The Movants have failed to establish Shuker violated any rule of professional conduct, committed any impropriety, or grounds exist for the disqualification of G & L.

● *Mataeka AP Proposed Findings of Fact and Conclusions of Law*

It is the customary practice of this Court to request parties file proposed findings of fact and conclusions of law ("FOFCOL") in lieu of closing arguments at the close of a trial. Established procedures exist for the submission of FOFCOL, which are treated as proposed orders.[132] Proposed FOFCOL, like proposed orders, constitute papers that must be served on the opposing party. Proposed FOFCOL must be generated in Word or Word Perfect, using 12–point, Times New Roman font with justified right margins.[133] The margins of any submitted paper must be one and one-fourth inches pursuant to Local Rule.

The Mataeka AP involved a multitude of complex factual and legal issues. The Mataeka AP trial reached its midpoint on June 17, 2005. The parties had presented numerous exhibits and witnesses, with substantially more evidence to be presented. The parties were invited to file proposed FOFCOL through an email commu-

---

130. *Id.* at pp. 166–67.

131. *Id.* at pp. 195–96.

132. *See* the main topic *Procedures* and the sub-topic *Proposed Orders* at the Court's website www.flmb.uscourts.gov.

133. *See id.*

nication sent by Coberly on June 20, 2005 to Shuker, Spradley, and Ginsberg:

> Good Afternoon, Judge Briskman would like the parties to submit any pending objections to the Christine Butler transcript within 14 days. You are also invited to file Findings of Fact Conclusions of Law not to exceed 15 pages, double spaced. The court would also like each of you to provide dates from now until the end of the year that you would not be available for concluding the hearing on this matter.[134]

Inviting the parties to submit proposed FOFCOL was to prompt them to focus their cases and evaluate what evidence was relevant for the remainder of the trial.

G & L submitted a document entitled "Findings of Fact and Conclusions of Law Regarding the Complaint Seeking to Avoid and Recover Fraudulent Transfers Made by Evergreen Security Ltd. to the Defendants" on July 18, 2005 consisting of forty-six pages (the "46–page FOFCOL")[135] via email in accordance with the proposed orders procedures in place at that time.[136] The Movants submitted on diskette a fifteen-page proposed FOFCOL in July 2005.[137] The parties did not serve their proposed FOFCOL on each other.

Shuker testified the parties had agreed between themselves to not exchange their proposed FOFCOL.[138] Shuker did not want to disclose any trial strategy or give the defendants an opportunity to alter their testimony by sharing Evergreen's proposed FOFCOL with opposing counsel.[139] Spradley testified the parties were directed by the Court to not exchange their FOFCOL.[140] The Movants were unable to present any evidence of such a directive. There was no direction or suggestion the parties were not to exchange their proposed FOFCOL.

The 46–page FOFCOL clearly exceeded the fifteen-page limitation. Evergreen's page overage was inadvertent.[141] The

134. Movants' Exh. No. 22.

135. Movants' Exh. No. 14.

136. Evergreen's Exh. No. A (email communication from Shuker's assistant to ecf.briskman@flmb.uscourts.gov). The Court's submission of electronic proposed orders procedures were later amended. Proposed orders may no longer be submitted via email. *See* www.flmb.uscourts.gov/proposedorders.htm.

137. December 11, 2006 transcript p. 65, ll. 1–3.

138. December 11, 2006 transcript at pp. 175–76, Shuker explains: "We got the email on June 20th to submit findings of fact and conclusions of law. It was silent on exchanging and the customary practice is to exchange, but we were in the middle of trial and in fact Mr. Huggins—excuse me—Mr. Knight I knew was going to be recalled by the defendants and there were parts of our findings that I did not want the other side to see on elements we felt we had proved that we didn't want them, the defendant to be able to try and correct his

testimony on certain aspects ... I called Mr. Spradley and indicated to him my reason for the request and he agreed that we would not exchange them. So there was no order. It was just our agreement."

139. *Id.* at p. 176, ll. 1–5.

140. December 11, 2006 transcript at p. 65, ll. 7–13 Spradley states: "It was our understanding that the submissions were to be made separately without sharing, contemporaneously filed with the Court ... It was either inferred from the email or there may have been a follow-up conversation with Ms. Coberly but I don't recall which of the two."

141. December 11, 2006 transcript at pp. 176–77 beginning at line 24 Shuker states: "I simply forgot Ms. Coberly's admonition. Most things I do I have Ms. Doris write them. I did not give her the email. I simply told her when they were due. She then came back with a rendering that was 46 pages which I reviewed and edited but by that time I had forgotten the admonition about page length and that was my mistake."

Movants learned of the 46–page FOFCOL submission in October 2005 in connection with the deposition of Evergreen's expert Richard Sandow in the Mataeka AP. Evergreen and its counsel were not aware of their failure to comply with the fifteen-page limitation until this point. An email exchange between Spradley and Shuker on October 10, 2005 reflects Spradley was concerned and upset about Evergreen's failure to comply with the fifteen-page limitation.[142]

Shuker sent an email to Spradley on October 17, 2005 stating his intention to submit a fifteen-page document to "replace" the 46–page FOFCOL.[143] Their correspondence reflects Spradley understood the Court had not reviewed either FOFCOL submitted by the parties.[144] G & L submitted a fifteen-page document entitled "Findings of Fact and Conclusions of Law" electronically on November 3, 2005 ("Evergreen's Replacement FOFCOL").[145] G & L did not serve Evergreen's Replacement FOFCOL on opposing counsel because of Shuker's understanding with Spradley.

Shuker advised Spradley of the submission by email later that day and stated he believed the page overage issue "is now a moot issue."[146] Spradley responded to the email: "Thanks for the note re: findings of fact and conclusions."[147] The Movants never gave Shuker any indication the issue was unresolved until several months later when it was raised in the Recusal Motion.

The filing of concluding proposed FOFCOL was discussed in open Court near the end of the Mataeka AP trial. Ginsberg inquired whether the parties would be asked to submit post-hearing briefs. The Court replied: "Only if you want to. I think you've got it pretty well briefed [in] your findings of fact ... If you have adjustments you can have adjustments." The Court explained in response to Ginsberg's question regarding closing arguments: "I mean, that's why I have the findings of fact. I don't need closing arguments. That's basically closing argument." The Court agreed to let the parties discuss closing arguments and briefs and asked them to advise the Court of

**142.** Movants' Exh. No. 18. Spradley states to Shuker in his email dated October 10, 2005: "Scott, for crying out loud—my side spent hours, and I mean MANY hours—tailoring [sic] our submission to 15 pages pursuant to the Court's request ... but I'm having trouble dealing with the page overage issue. The clients feel we got short changed on our submission—and my vouching for you and your reputation in rebuttal to my own clients is being received in less than favorable fashion. This [expletive deleted]. Please explain."

**143.** Evergreen's Exh. G.

**144.** Evergreen's Exh. G, H, and I. Shuker communicated to Spradley in his October 17, 2005 email (Exh. G.): "... Anyhow, enjoy the proposed findings and use them in good health. [To] that end, I understand that you called Susan about the page [length] and were informed the Judge has not yet looked at either proposed findings. Thus, it seems the simple solution is for me to cut mine down to 15 pages and replace the longer one. I assume you are fine with this and simply ask until 11/7 to submit such. Let me know your thoughts."

Shuker sent an email to Spradley on November 3, 2005 (Exh. H) stating: "... By the way, we submitted revised FOF/CL today which were 15 pages; the Judge never reviewed the longer one. Thus, I assume that is now a moot issue." Spradley responded by email on November 4, 2005 (Exh. I) discussing the scheduling of witnesses and concluding: "... Thanks for the note re: findings and conclusions. I'll call you in a while."

**145.** Evergreen's Exh. C.

**146.** Evergreen's Exh. H.

**147.** Evergreen's Exh. I.

their preferences.[148]

Both sides submitted proposed FOF-COL on diskettes in December 2005 after the conclusion of the trial. The fifteen-page limitation applied to the post-trial submissions.[149] Evergreen submitted a fifteen-page document titled "Memorandum Opinion" ("Evergreen Final FOFCOL") and a proposed "Final Judgment." The Movants submitted a fifteen-page document titled "Defendants' Proposed Findings of Fact and Conclusions of Law" ("Movants' Final FOFCOL") and an eight-page document entitled "Citations to Record." The opening paragraph of the Citations to Record explains: "Citations are to each numbered paragraph of the Findings of Fact, where date is the date of testimony; 'V' equals transcript volume; and 'p' and 'pgs' equals transcript page number." The parties, apparently by agreement, did not serve these documents on each other.

The heart of the Movants' Recusal Motion is the 46–page FOFCOL. The Movants contend the 46–page FOFCOL constituted an *ex parte* filing that was improperly received and used by the Court thereby giving Evergreen an advantage over the Movants. They assert the contents of the 46–page FOFCOL were incorporated wholesale into the Mataeka Judgment. The Recusal Motion states at least seven times the Court directed *ex parte* communications. The Movants conceded at trial they could not produce a communication evidencing the Court directed *ex parte* communications. They continued to press forward with the allegation despite their knowledge the allegation had no factual basis.

The Movants spend considerable time in their Recusal Motion contesting the findings made in the Mataeka Judgment. They allege the findings are not based upon trial evidence but derive from the 46–page FOFCOL. Any disagreement the Movants have with the outcome of the Mataeka AP and the findings made in the Mataeka Judgment should be addressed in their appeal.

Neither side followed proper procedures with their proposed FOFCOL. The parties' submissions constitute written papers filed by electronic means. They are subject to the Rules of this Court, the Federal Rules of Bankruptcy Procedure, and the Federal Rules of Civil Procedure. The Mataeka AP constituted an adversary proceeding and, accordingly, the parties were required to exchange their proposed FOF-COL and file proof of service. Neither side complied with the service requirements for filed papers.[150] The Court did not direct or suggest the parties not serve their submissions on each other and the Court did not engage in *ex parte* communications.

Neither side complied with the formatting requirements for filed papers. Both parties manipulated the formatting of their proposed FOFCOL to maximize word space. Such manipulation resulted in violations of the fifteen-page limitation. Evergreen's Replacement FOFCOL and Final FOFCOL are formatted differently than its 46–page FOFCOL. The 46–page FOFCOL has margins that are greater than one inch, with the bottom margin being two inches, is only left-justified, and

148. November 8, 2005 Mataeka AP transcript at pp. 86–87.

149. Movants' Exh. No. 45.

150. Spradley conceded the Movants' allegation the Court directed *ex parte* submissions is based on an impression and not fact: "Court: Anything else about ex-parte other than your impression? Spradley: Certainly my impression but I can't give you anymore than that." December 11, 2006 transcript at p. 137, ll. 22–25.

its text is a twelve-point font. Evergreen's subsequent submissions have margins that are less than one inch, are fully justified, and the text's font size was reduced to eleven. The formatting changes made to Evergreen's Replacement FOFCOL and Final FOFCOL allowed Evergreen to increase the number of words in those submissions.

The Movants violated the fifteen-page limitation. They manipulated their document formatting just as Evergreen manipulated its document formatting. Their submissions utilize an eleven-point font, have side margins of one inch, and have top and bottom margins of .8 inches.[151] Their Citations of Record, consisting of eight pages, constitutes conclusions of law. The content of the Citations of Record is part of the Movants' Final FOFCOL. The Movants' December 2005 submission constitutes a total of twenty-three pages.[152] Spradley conceded the submission allowed the Movants to exceed the fifteen-page limitation: "Well, we did get extra words. We wanted, you know, because the first set of submissions didn't have any citations." [153]

Evergreen also made some structural changes in its Replacement FOFCOL and Final FOFCOL to maximize word space. It shortened the caption and title, removed all subheadings, combined several paragraphs, removed the lengthy historical fact recitation, and adopted the findings of the Kime Decision. Evergreen's 46–page FOFCOL, Replacement FOFCOL, and Final FOFCOL are substantively similar. Evergreen's inadvertent submission of the 46–page FOFCOL was a harmless error that had no effect on the Mataeka Judgment or the outcome of the Mataeka AP. By manipulating the formatting of their submissions the parties violated the fifteen-page limitation and the Local Rules. Spradley recognized their violation.[154]

None of the submissions were particularly helpful. A substantial portion of Evergreen's submissions addressed 11 U.S.C. Section 548, which is a Bankruptcy Code provision having no relevance to the Mataeka AP. The Movants' Final FOFCOL contained self-serving statements that did not comport with the evidence and conclusions that were not supported by law. The parties' proposed FOFCOL submissions did not affect the outcome of the Mataeka AP.

### Summary

The Movants' motivations in filing the Recusal Motion are suspect based upon the content, the extraordinary relief requested, and the timing of the filing. The Movants devote a considerable portion of their Recusal Motion protesting the appointment of an interim trustee in the Huggins and Knight involuntary cases and the Mataeka AP judgment. The Movants, not satisfied with the outcomes of those matters, can utilize the appeal process to address any perceived errors of factual or legal findings.

The relief sought is extraordinary and unfounded. They seek to undo and relitigate every decision in the Main Case, which has been pending since 2001, and all

---

151. Their Citations to Record is in a twelve-point font.

152. Evergreen's Final FOFCOL contains 6,269 words (and 33,014 characters) whereas the Movants' Final FOFCOL and their Citations to Record contain a total of 10,491 words (and 57,564 characters). The Movants attempted to gain a substantial advantage in filing their Citations to Record.

153. December 11, 2006 transcript at p. 139, ll. 2–4.

154. December 11, 2006 transcript at p. 140, ll. 8–18.

of the Related Cases. The Movants could have sought reconsideration and/or appellate review of any decision they deemed unsatisfactory.

The Recusal Motion was not timely presented. The incidents raised by the Movants occurred well before the Recusal Motion was filed. The deposition skirmish between Shuker and Ginsberg occurred on August 9, 2005—almost a year before the Recusal Motion was filed. GrayRobinson knew as early as October 2005 G & L had filed the 46–page FOFCOL, yet the Movants waited ten months to file the Recusal Motion. The deposition in aid of execution incident between Shuker and Spradley occurred seven weeks prior to the filing of the Recusal Motion. The Recusal Motion was filed the day after the trial of the Knight and Huggins involuntary petitions began.

The Movants assert they were forced to file the Recusal Motion because the Court did not make certain disclosures. They did not request the Court make any disclosures or raise any of the matters contained in the Recusal Motion prior to its filing.

The content of the Recusal Motion and the trial events suggest the Movants' purpose was not recusal. The Recusal Motion is not supported by facts. It is constructed on speculation, innuendo, suspicion, opinion, and non-factual matters. The Movants qualify many of their statements with words such as "seemed to be," "apparently," "appears," and "presumably" attempting to distance themselves from the allegations. The Movants: exaggerated and distorted events; inflated actions by Shuker to grounds for disqualification of G & L when his actions did not rise to a violation of the Rules of Professional Conduct; colored the facts of the ATN AP and Evergreen proceedings and then conflated those matters; adulterated the facts regarding the Mataeka AP FOFCOL submissions and ignored their own violations of the fifteen-page limitation; and fabricated a relationship between Shuker and the Court where none exists.

The Movants proceeded and continued with the trial knowing the basis of the Recusal Motion is unsupported. When they could not establish an allegation, they did not withdraw or step back from the allegation, but attempted to disprove the negative to support the Recusal Motion.

Spradley conceded the Recusal Motion was not constructed from substantive, solid facts, but originates from frustrations over adverse rulings:

> The accumulative [*sic*] effect of some occurrences similar to the one that we're talking about here. I just didn't feel we were getting a fair shake, and that July order was one that troubled me because I felt that the motion was filled with factual inaccuracies. It alleged that discovery was needed on an expedited basis because the petitioning creditors weren't aware of certain facts which I didn't think was true and I wanted the opportunity to be heard.

> I was just—I was really frustrated at that point, the fact that I felt relief was coming down in favor of the plaintiff and against the defendants in the case and in a fashion that didn't appear to be just.[155]

> . . .

> . . . but we just felt there was a body of information out there that suggested that these two guys [Knight and Huggins] were simply not getting their fair shake and we acted upon it, rightly or wrongly we acted upon it, and I'm sure everyone in this room has thought how

---

**155.** December 11, 2006 transcript at p. 116, ll. 11–23.

regretful the whole situation is but that's what we saw.[156]

Ginsberg admitted at the conclusion of the Recusal Motion trial, "I never expected there to be a factual evidentiary hearing regarding [the Recusal Motion]." [157] Given the number of serious and intensely factual allegations, it is remarkable the Movants could anticipate a decision could be justly rendered without an evidentiary hearing. Ginsberg's statement evidences the Recusal Motion was filed not to address legitimate issues, but for the purposes of harassment and delay. Ginsberg's letter of January 22, 2007, in which the Movants retreat from several allegations, further reveals allegations in the Recusal Motion were groundless.

The Movants failed to establish any of the allegations made in their Recusal Motion. They failed to establish any improprieties committed by the Court. The Court has not engaged in *ex parte* or inappropriate communications in these proceedings. They did not establish their Judicial Council of the Eleventh Circuit Court of Appeals allegations. They presented no evidence establishing the impartiality of the undersigned might reasonably be questioned. A reasonable person with knowledge of all the facts would not conclude the undersigned's impartiality might reasonably be questioned. The undersigned does not believe his impartiality can reasonably be questioned. No basis for recusal of the undersigned exists.

The Movants failed to establish Shuker violated any ethical rule, committed any improprieties, or engaged in conduct that threatened disruption of proceedings or is a deliberate challenge to the authority of the Court. There is no basis for the dis-

qualification of G & L. No basis has been established for the revocation of any orders entered or decisions rendered in the Evergreen Case or the Related Cases. The Recusal Motion is due to be denied.

## CONCLUSIONS OF LAW

### Recusal Standard

██ The Movants contend recusal of the undersigned is mandated by 28 U.S.C. Section 455(a), which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." [158] The purpose of Section 455 is "to ensure that the matters before the courts are decided by a judiciary that is impartial both in fact and in appearance." *Strickler v. Pruett*, Case Nos. 97–29, 97–30, 1998 WL 340420, at \*14 (4th Cir. June 17, 1998).

██ The standard for recusal based on a claim of lack of impartiality is objective reasonableness. *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 924, 124 S.Ct. 1391, 158 L.Ed.2d 225 (2004); *Microsoft Corp. v. U.S.*, 530 U.S. 1301, 1301, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.1988). The recusal inquiry for a judge based upon perceived lack of impartiality must be "made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp.*, 530 U.S. at 1301, 121 S.Ct. 25. Recusal is appropriate where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. *Id.*

---

156. *Id.* at p. 146, ll. 11–17.

157. January 29, 2007 transcript (unsealed by court reporter) at p. 23, ll. 1–3.

158. Section 455 derives from Canon 3(C) of the Code of Judicial Conduct.

█ The recusal statute has a subjective component, which is self-effectuating. A judge must be "subjectively confident of his ability to be evenhanded...." *In re Bernard,* 31 F.3d 842, 844 (9th Cir.1994). Recusal is called for if such confidence is not present. Section 455(a) requires "*sua sponte* action by the judge if any applicable disqualifying factor is discovered. Likewise, the judge has a duty to retain the case when faced with a meritless motion to recuse or disqualify." 9 COLLIER ON BANKRUPTCY ¶ 5004.01[3], at 5004.14 (15th ed. rev.2005).

█ "The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney,* 541 U.S. at 914, 124 S.Ct. 1391. The Court is not required to accept the movant's factual statements as true. *Parker v. Connors Steel,* 855 F.2d at 1525; *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir.1986) (explaining a party cannot force the judge to accept the party's factual allegations as true, otherwise the result would be a virtual open season for recusal); *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir.1985) (stating the judge is free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his own personal knowledge).

█ The Movants' Recusal Motion is not grounded on factual matters. A recusal motion based on "rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" or "prior rulings in the proceeding, or another proceeding, solely because they were adverse" does not satisfy the requirements for disqualification pursuant to Section 455(a). *United States v. Cooley,* 1 F.3d 985, 993–94 (10th Cir.1993).

A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex proprio vigore,* create a cloud on her impartiality ... To hold otherwise would transform recusal motions into tactical weapons which prosecutors and private lawyers alike could trigger by manipulating the gossamer strands of speculation and surmise.

*In re U.S.,* 158 F.3d 26, 35 (1st Cir.1998). A trial judge has a duty to not recuse himself on unsupported speculation. *Willner v. University of Kansas,* 848 F.2d 1023, 1027 (10th Cir.1988).

█ The Movants have failed to present any facts establishing the allegations made in their Recusal Motion. The Movants did not establish their Judicial Council of the Eleventh Circuit Court of Appeals allegations. They failed to establish any improprieties regarding the emergency discovery motion proceedings in the involuntary cases. The Court has not engaged in *ex parte* or inappropriate communications in these proceedings. The Court has not, and the Movants concede, empowered Shuker or endorsed any of his actions complained of in the Recusal Motion.

The Movants have presented no evidence establishing the impartiality of the undersigned might reasonably be questioned by a well-informed third person pursuant to 28 U.S.C. Section 455(a). A reasonable person with knowledge of all the facts would not conclude the undersigned's impartiality might reasonably be questioned. The undersigned harbors no doubts as to his impartiality. No basis for recusal exists pursuant to 28 U.S.C. Section 455(a). The Court is duty-bound to not recuse itself.

The Recusal Motion was filed in retaliation of and as a collateral attack upon rulings adverse to the Movants. They

challenge in the Recusal Motion the appointment of an interim Trustee in the Knight and Huggins involuntary cases; the expedited discovery orders entered in the Huggins and Knight involuntary cases; the Court's resolution of the automatic stay issues in the involuntary cases; and the Mataeka Judgment. These are matters that should be addressed in motions for reconsideration or the appeal process. None of these prior rulings constitutes a proper basis for a recusal motion.

■■■■ A recusal motion based on "prior rulings in the proceeding, or another proceeding, solely because they were adverse" does not satisfy the requirements for disqualification pursuant to Section 455(a). *Cooley,* 1 F.3d at 993–94. A decision rendered by a judge after trial unfavorable to the defendant, even where the judge is "exceedingly ill disposed towards the defendant," is not a basis for recusal. *Liteky v. U.S.,* 510 U.S. 540, 550–51, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Id. (quoting In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2d Cir.1943)). Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley,* 1 F.3d at 993.

■■■■■■ The content, timing, and relief requested evidence the Movants filed the Recusal Motion for improper purposes. They filed it months after many of the events complained of had occurred and after significant rulings had been issued on the merits. Untimely claims made pursuant to Section 455 should not be considered. *In re Kansas Pub. Employees Ret. Sys.,* 85 F.3d 1353, 1360 (8th Cir.1996). A recusal motion must be brought "at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim." *Gil Enters., Inc. v. Delvy,* 79 F.3d 241, 247 (2d Cir.1996). This rule is premised upon:

> First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*LoCascio v. U.S.,* 473 F.3d 493, 498 (2d Cir.2007) (*quoting In re Int'l Bus. Mach. Corp.* 45 F.3d 641, 643 (2d Cir.1995)). "Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issues only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir.1986).

■■■■ The Recusal Motion was not timely filed. The Movants filed it as a litigation tactic to delay the collection proceedings and to harass the Court and Evergreen's counsel. Their filing of the Recusal Motion for tactical purposes constitutes an abuse of the recusal statutes. *Sensley v. Albritton,* 385 F.3d 591, 599 (5th Cir.2004).

### Proposed Findings of Fact and Conclusions of Law

Established procedures and rules exist governing the submission of proposed FOFCOL.[159] Proposed FOFCOL are

---

159. *See* the main topic Procedures and the sub-topic Proposed Orders at the Court's web- site www.flmb.uscourts.gov

treated as proposed orders.[160] Local Rule 5005–3 sets forth the format requirements for proposed orders and papers:

> Paper pleadings and other submissions and proposed orders and other papers, including attachments thereto, tendered for filing shall be typewritten, or if produced by computer generated software, shall be printed by letter quality printers, shall be singled-sided [*sic*], void of tabs, and shall be on white paper approximately eight and one-half inches wide by eleven inches long, with one and one-fourth inch margins.

A paper filed electronically "constitutes a written paper for the purpose of applying these rules, the Federal Rules of Bankruptcy Procedure, and § 107 of the Code." Local Rule 5005–1.

Proposed FOFCOL constitute papers that must be served on the opposing party pursuant to Federal Rule of Civil Procedure 5, which encompasses every possible type of document:

> (a) **Service: When required.** Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery related to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties . . . .

Fed.R.Civ.P. 5(a) (2006). Federal Rule of Civil Procedure 5 is applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7005. Local Rule 7005–1 sets forth the requirements for proof of service.

The Mataeka AP was an adversary proceeding. The parties were required to format their proposed FOFCOL in conformity with Local Rule 5005–3. They were required to serve their proposed FOFCOL on each other pursuant to Federal Rule of Civil Procedure 5(a) and issue proof of service in accordance with Local Rule 7005–1.

The Court did not direct or suggest the parties not exchange their proposed FOFCOL at any point in these proceedings. The parties, for their own reasons, decided to not exchange their FOFCOL. The Court did not engage in *ex parte* communications with any of the parties. Their failure to serve papers on each other was in violation of Federal Rule of Civil Procedure 5(a) and Local Rule 7005–1. The parties committed additional violations of the Local Rules by taking liberties with the formatting of their proposed FOFCOL.

The inadvertence of G & L in submitting a 46–page FOFCOL was harmless error. The parties knew, as evidenced by their email communications, the Court never reviewed or utilized the 46–page FOFCOL. The proposed FOFCOL submitted by the parties did not affect the outcome of the Mataeka AP.

The Movants have failed to establish any basis for the revocation of any orders entered or decisions rendered in the Main or the Related Cases.

### *Disqualification of G & L*

Members of The Florida Bar and every foreign attorney authorized to practice before any court in Florida for a specific case are governed by the Florida Rules of Professional Conduct. R. Regulating Fla. Bar

---

**160.** *See Id.* Local Rule 9072–1 sets forth content requirements for proposed orders.

1–10.1, 3–4.1.[161] The Preamble to the Rules of Professional Conduct explains the scope and application of the Rules:

> The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself ... [T]he text of each rule is authoritative ...
>
> ...
>
> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process.
>
> ...
>
> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.

An attorney is to fulfill three roles: (i) a "representative of clients;" (ii) "an officer of the legal system;" and (iii) "a public citizen having special responsibility for the quality of justice." See Rules Regulating the Florida Bar, Preamble. It is the lawyer's duty, as an officer of the legal system, to "demonstrate respect for the legal system and for those who serve it, including judges ... While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process." Id.

■■■ The standards of conduct members of the bar are to follow are not limited to the provisions of the Rules of Professional Conduct. "The commission by a lawyer of any act that is unlawful or contrary to honesty and justice ... may constitute a cause for discipline." [162] Rule 3–4.3. A finding of misconduct shall include one or more of the disciplinary measures set forth in Rule 3–5.1. Bar grievances are determined by the disciplinary agencies of the Supreme Court of Florida pursuant to Rules 3–1.2 and 3–3.1.

■■■■ Attorneys who practice in this Court are subject to the Rules of Professional Conduct and subject to the discipline of this Court for violations pursuant to Local Rule 2090–2:

> Any attorney who appears in this Court, including those appearing *pro hac vice* or pursuant to the provisions of Local Rule 2090–1(c)(1) or (2), shall be deemed to be familiar with, and shall be governed by these rules; and shall also be deemed to be familiar with and governed by the Rules of Professional Conduct and other ethical limitations or requirements then governing the pro-

---

**161.** Rule 1–10.1 of the Rules Regulating the Florida Bar entitled "Compliance" provides: "All members of The Florida Bar shall comply with the terms and the intent of the Rules of Professional Conduct as established and amended by this court." The Rules of Discipline are found in Chapter 3 and the Rules of Professional Conduct are found in Chapter 4 of the Rules Regulating the Florida Bar.

**162.** False accusations made regarding the judiciary may be subject to discipline. See, e.g., *In re The Florida Bar,* 284 So.2d 686 (Fla. 1973); *State ex rel. Florida Bar v. Calhoon,* 102 So.2d 604 (Fla.1958).

fessional behavior of members of The Florida Bar and shall be subject to the disciplinary powers of the Court, including the processes and procedures set forth in District Court Local Rule 2.04.[163]

A bankruptcy court has jurisdiction to determine disqualification matters arising from alleged violations of the Rules of Professional Conduct. *See, Schlumberger Tech., Inc. v. Wiley*, 113 F.3d 1553, 1560 (11th Cir.1997) ("[I]n cases where the district court's decision to disqualify an attorney was based on an alleged ethical violation, we carefully reviewed the court's interpretation and application of the Rules of Professional Conduct."); *In re Finkelstein*, 901 F.2d 1560, 1564 (11th Cir.1990) ("The state codes of professional responsibility do not by their own terms apply to sanctions in the federal courts and any standards imposed are a matter of federal law ... The sanctioning court must, however, hold attorneys accountable to recognized standards of professional conduct.").

The Movants allege Shuker violated Rules 4–3.4(g) and 4–3.4(h), which provide: [164]

A lawyer shall not:

. . .

(g) present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

(h) present, participate in presenting, or threaten to present disciplinary charges under these rules solely to obtain an advantage in a civil matter.

They allege Shuker violated Rules 4–3.4(g) by threatening criminal charges against Knight and Huggins outside the courtroom and against Spradley at the Knight deposition in aid of execution of the Mataeka Judgment.

■■■ Shuker made statements directed to the Movants' counsel outside of the courtroom in the presence of Knight. His statements were not threats relating to criminal charges, but related to possible civil contempt. His statements were based upon *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294 (11th Cir.2002) in which the Court of Appeals affirmed the Bankruptcy Court's order holding a debtor in civil contempt for violating an order requiring him to turnover trust assets and directing his incarceration if compliance did not occur by a specific date. The Knight and Huggins involuntary cases involve discovery turnover and trust asset issues. Knight understood Shuker's statements to relate to possible civil contempt.

Shuker's statements were excessively aggressive. He could have communicated his message in a more tempered manner, and, thereby, perhaps, evoked a settlement dialogue. Shuker's communications may have alienated opposing counsel and their clients rather than opening settlement discussions, but did not rise to the level of a violation of the Rules of Professional Conduct.

The exact words of the exchange between Shuker and Spradley at the Knight deposition related to Shuker asking Spradley to leave in order to keep Huggins' testimony (whose deposition was scheduled

---

**163.** District Court Local Rule 2.04(a) provides: "Any member of the bar of this Court, admitted generally under Rule 2.01 or specially under Rule 2.02, may, after hearing and for good cause shown, be disbarred, suspended, reprimanded or subjected to such other discipline as the Court may deem proper."

**164.** The Movants discuss Disciplinary Rule 7–105(A) and EC 7–21 in their Recusal Motion. No such provisions are in effect. It would appear the Movants meant to cite FL RPC 4–3.4.

to follow Knight's) from being influenced by Knight's testimony. Huggins may have been advantaged by knowing the content of Knight's testimony. Shuker's actions were an attempt to create a level playing field for Evergreen in its Mataeka Judgment collection efforts. He was upset and frustrated with the Movants and he let his emotions get the better of him. His behavior was inappropriate, but did not rise to the level of a breach of the Rules of Professional Conduct.

Shuker did not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. The Movants failed to establish Shuker violated Rule 4–3.4(g).

 The Movants allege Shuker violated Rule 4–3.4(h) when he threatened to file a bar grievance against Ginsberg during the Charles Baron deposition. Shuker raised the possibility of a bar grievance after Ginsberg made attempts to keep the witness from answering a pending question. Shuker did not threaten a bar grievance to obtain an advantage, but in an effort to have Ginsberg follow appropriate deposition procedures and have the witness answer a proper question. Shuker did not present, participate in presenting, or threaten to present disciplinary charges solely to obtain an advantage in a civil matter. The Movants failed to establish Shuker violated Rule 3.4(h).

 The Movants contend G & L must be disqualified in the Main Case and all other matters due to Shuker's alleged violations of the ethical rules and "improprieties." The standards governing disqualification of counsel in the Eleventh Circuit differ depending upon the circumstances. *In re BellSouth Corp.*, 334 F.3d 941, 958 (11th Cir.2003). If the conduct at issue threatens disruption of the court proceedings or is a deliberate challenge to the authority of the court, deference is given to a trial court's decision to disqualify the responsible attorney. *Schlumberger*, 113 F.3d at 1561.[165] If the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, disqualification decisions must rest on the violation of specific Rules of Professional Conduct and not on some "transcendental code of conduct . . . that . . . exist[s] only in the subjective opinion of the court." *Id.* (*quoting In re Finkelstein*, 901 F.2d at 1565). This standard is a higher standard than the standard in the first scenario.[166]

 The Movants carry the burden of establishing grounds for the disqualification of G & L. *BellSouth Corp.*, 334 F.3d at 961. Their burden is a "heavy one." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983). A party's right to counsel of his choice "may be overridden only if 'compelling reasons' exist." *Id.* (*quoting Texas Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992)). Disqualification motions are sub-

---

**165.** This standard emanates from *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir.1985).

**166.** Where disqualification is based upon an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys. It must make explicit findings of fact and conclusions of law. "The court must clearly identify a specific RPC which is applicable to the relevant jurisdiction and must conclude the attor-

ney violated that rule—a legal conclusion subject to full appellate review—for its order to be upheld." *Schlumberger Tech., Inc. v. Wiley*, 113 F.3d at 1561. The *Schlumberger* requirement of specific findings has "its roots in the due process notion that an attorney should not be sanctioned for conduct determined after the fact to have been unethical without fair notice to the attorney that such conduct was prohibited." *In re BellSouth Corp.*, 334 F.3d at 959 n. 13.

ject to "careful and exacting" review because of the potential for strategic abuse. *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir.1992).

The Movants failed to establish grounds for the disqualification of G & L. They failed to establish Shuker violated any ethical rule or committed any improprieties based upon the facts and circumstances presented. Shuker did not engage in any conduct that threatened disruption of any proceedings or was a deliberate challenge to the authority of the Court.

### Conclusion

The parties have been engaged in contentious litigation for several years. The Mataeka AP resulted in a substantial judgment against Knight and Huggins jointly and severally. Evergreen has taken assertive collection actions resulting in the garnishment of GrayRobinson's trust account, the filing of three involuntary bankruptcy cases, and the appointment of an interim Trustee in the involuntary cases. The Movants are displeased with adverse rulings and have vigorously fought Evergreen's collection efforts.

Recusal motions filed with the proper intent serve to ensure the integrity of our judicial system and fairness and impartiality in court proceedings. The Recusal Motion was not filed in good faith. It was filed as a litigation tactic to harass and delay. The Movants made no attempt to address the alleged events when they occurred. They waited several months to file the Recusal Motion and filed it the day after the start of the trial of the involuntary bankruptcies.

The Recusal Motion is devoid of substance and is unfounded. It is not based on facts, but speculation, innuendo, suspicion, opinion, exaggeration, and distortion. The Movants distorted the ATN AP events and conflated that unrelated case with Evergreen to contrive an appearance of impropriety. They misrepresented the facts regarding the FOFCOL submissions. They alleged the Court engaged in *ex parte* communications when no such communications occurred and they knew of no facts supported that allegation. The Movants fabricated a relationship between Shuker and the Court where none exists. Counsel for the Movants conceded no improper relationship exists between Shuker and the Court.

The Movants and their attorneys were unyielding in their litigation of the Recusal Motion, even when the Recusal Motion was exposed as unfounded at trial. The watershed of the trial was the December 11, 2006 hearing, which was the fact portion of the trial. The presentation of fact witnesses was completed on December 11th and the trial was essentially finished. The Movants were unable to produce any evidence establishing their claims. They failed to establish: the Court committed any improprieties; the Court directed or engaged in *ex parte* or inappropriate communications; their Judicial Council of the Eleventh Circuit Court of Appeals allegations; any improper relationship exists between Shuker and the Court or the Court endorsed his actions; or that Shuker violated any ethical rule, committed any improprieties, or engaged in conduct that threatened disruption of proceedings or was a deliberate challenge to the authority of the Court. Spradley acknowledged the Movants violated the FOFCOL 15-page limitation.

Despite the exposure of the Recusal Motion as unfounded and the Movants' unclean hands regarding their FOFCOL, the Movants continued to litigate the Recusal Motion insisting on an opportunity to further examine Lubet and present a rebuttal case. The Movants, unprepared to present their rebuttal case on December 11th, delayed the conclusion of the trial to Janu-

ary 29, 2007. When the trial was reconvened on January 29, 2007, the Movants declined to complete their cross-examination of Lubet and rested with no further witnesses.

Tensions were high between the parties and Evergreen's counsel has been frustrated by litigation and post-judgment maneuverings of the Movants and their counsel. Shuker has been aggressive in his representation and perhaps antagonistic towards opposing counsel. The Movants inflated and distorted his actions. None of Shuker's actions rise to the level of a breach of the Florida Rules of Professional Conduct.

No basis for recusal of the undersigned exists. No basis for the disqualification of G & L exists. The Movants have failed to establish any basis for the revocation of any orders entered or decisions rendered in the Main Case or the Related Cases. The Recusal Motion must be denied.

The lack of any supporting evidence, the timing of filing, and the extraordinary relief requested reflect the Movants filed the Recusal Motion to frustrate Evergreen's collection efforts and to harass the Court and Evergreen's counsel. The Movants and their counsel abused the recusal statutes, this Court, Evergreen and its counsel by filing the Recusal Motion for an improper purpose. They subverted the Rules of Professional Conduct by invoking the Rules as offensive procedural weapons. Their actions are corrosive to the proper functioning and the integrity of the judicial system.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Movants' Recusal Motion is hereby **DENIED**.